# DISTRICT COURT OF GUAM
# TERRITORY OF GUAM

| | |
|---|---|
| DENNIS G. and ASUNCION S. RODRIGUEZ,<br><br>Petitioners,<br><br>vs.<br><br>GOVERNMENT OF GUAM and<br>ARTEMIO B. ILAGAN, in his capacity as<br>Director, Department of Revenue and Taxation,<br><br>Respondents. | CIVIL CASE NO. 09-00025<br><br><br><br>**ORDER** |

On January 26, 2009, this matter came before the court for hearing on a Motion to Dismiss First Amended Petition ("Motion to Dismiss"),[1] filed by the Respondents.[2] See Docket

---

[1] The Motion to Dismiss was brought pursuant to Rule 12(b)(1), (2) and (6) of the Federal Rules of Civil Procedure. See Docket No. 12 at 1. Pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to **and not excluded** by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d) (emphasis added).

In this case, matters outside the pleadings were presented to the court in the form of various affidavits and documentary exhibits submitted by both parties in support of and in opposition to the Motion to Dismiss. At the January 26 hearing, the court announced that it would exclude these extraneous pleadings and not consider them in making its ruling. Additionally, at the hearing held on January 20, 2010, counsel reaffirmed the Respondents' intention to have the court treat its motion as a motion to dismiss – not a motion for summary judgment under Rule 56. Accordingly, the court will not convert the instant Motion to Dismiss into a motion for summary judgment.

[2] The First Amended Petition ("FAP") named the Government of Guam and Mr. Ilagan as the Respondents in this action. The Respondents shall hereinafter be collectively referred to as the Department of Revenue and Taxation ("DRT").

No. 12. Representing the Petitioners was Thomas J. Fisher, and Assistant Attorney General David J. Highsmith appeared on behalf of DRT. Upon review of the relevant pleadings, and with due consideration of the parties' argument and the applicable caselaw, the court hereby issues the following Order denying DRT's Motion to Dismiss.

### FACTS[3]

The Petitioners and DRT did not agree on the amount of taxes the petitioners owed for Tax Years 1996 to 2001. In an effort to resolve the dispute, on October 25, 2006, the Petitioners filed an Offer in Compromise - Doubt as to Liability (DRT Form 656).[4] See FAP, Docket No. 12, at ¶10B.

Prior to any determination (*i.e.*, acceptance, rejection, or return) on the Offer in Compromise, DRT issued the Petitioners a Notice of Deficiency on July 5, 2007, setting forth the following deficiency amounts, exclusive of penalties for each year:

| YEAR | DEFICIENCY |
|---|---|
| 1996 | $ 281,306.00 |
| 1997 | $ 282,476.00 |
| 1998 | $ 97,646.00 |
| 1999 | $ 75,266.00 |
| 2000 | $ 115,463.00 |
| 2001 | $ 92,746.00 |
| **SUM** | **$ 944,903.00** |

See FAP, Docket No. 12, at ¶8.

On October 10, 2008, DRT rejected the Petitioners Offer in Compromise. See FAP, Docket No. 12, at ¶10F. The Petitioners contend that DRT is required by law (26 U.S.C. §

---

[3] The following facts are taken from the FAP only since the court has decided to exclude all matters outside of the pleadings. See footnote 1 *supra*.

[4] This is in contrast to an Offer in Compromise - Doubt as to Collectibility, which requires the filing of an additional form (Form 433-A regarding a taxpayer's financial information). See FAP, Docket No. 12, at ¶10D. Based on Attachment B to the FAP, it appears that the Petitioners offered to pay $40,000 to compromise the outstanding tax issues.

7122(e)) and regulation (26 C.F.R. § 301.7122-1(f)(1)) to conduct an independent administrative review of any offer in compromise before its rejection is communicated to a taxpayer. See FAP, Docket No. 12, at ¶10H. The Petitioners claim that DRT conducted no such administrative review prior to communicating the rejection of the Petitioners' Offer in Compromise to them. See FAP, Docket No. 12, at ¶10I. Additionally, the Petitioners allege that on October 22, 2008, they requested an appeal of the rejection of their Offer in Compromise, but they were not given an appeal. See FAP, Docket No. 12, at ¶10J. The Petitioners claim that because no independent administrative review of the Offer in Compromise was conducted, the October 10, 2008 rejection was invalid. Furthermore, because DRT did not "lawfully reject" the Offer in Compromise within the two-year statutory limit set forth in 26 U.S.C. § 7122(f),[5] then DRT's failure to act constituted an acceptance of the Offer in Compromise. See FAP, Docket No. 12, at ¶10L. Having accepted said compromise, the Petitioners assert that it is improper for DRT to now attempt to collect on the underlying deficiencies. See FAP, Docket No. 12, at ¶10M.

On April 8, 2009, DRT filed a Notice of Guam Tax Lien. See FAP, Docket No. 12, at ¶3 and Attachment A thereto. The following amounts were reported as the outstanding balances of the tax assessments, inclusive of interest and penalties:

| YEAR | ASSESSMENT |
|---|---|
| 1996 | $ 779,082.62 |
| 1997 | $ 760,128.52 |
| 1998 | $ 208,685.22 |
| 1999 | $ 175,520.96 |
| 2000 | $ 249,519.55 |
| 2001 | $ 145,259.57 |
| **SUM** | **$ 2,318,196.44** |

---

[5] The statute, as enacted, has two subsections (f). The first subsection (f) concerns frivolous submissions of offers in compromise, while the second subsection (f) relates to offers being deemed accepted if not rejected with a certain period. Unless otherwise indicated, all references herein to Section 7122(f) are to the second subsection (f) of 26 U.S.C. § 7122.

See FAP, Docket No. 12, at ¶7.

The Petitioners filed a written request for a Collection Due Process hearing ("CDP hearing") on April 27, 2009. See FAP, Docket No. 12, at ¶4. Said hearings took place on July 6 and 14, 2009. See FAP, Docket No. 12, at ¶5.

On August 24, 2009, DRT sustained its decision to issue the notice of lien. See FAP, Docket No. 12, at ¶6 and Attachment B thereto. The DRT's written letter (Attachment B to the FAP) specified that "legal, administrative, and procedural requirements have been met pursuant to the Guam Territorial Income Tax Laws." The letter went on to state that the Petitioners were precluded from challenging the underlying tax liability because they failed to timely file a petition with this court after DRT issued the Notice of Deficiency in July 2007. The letter further provided that following the CDP hearings held in July 2009, the Petitioners could not provide clear and convincing proof that the tax assessments were in error, and DRT still believed the Petitioners had no valid argument as to why they only owed $40,000 for the six years in question.

On September 22, 2009, the Petitioners filed the instant action. See Docket No. 1. The First Amended Petition was filed on November 6, 2009. See Docket No. 12. Subsequently, DRT filed the instant Motion to Dismiss on November 27, 2009. Thereafter the parties each filed their respective Opposition and Reply briefs.

**ANALYSIS**

The Respondents seek dismissal of this action on various grounds: (1) Title 26, United States Code, Section 6213(a) bars the bringing of this action; (2) the FAP fails to state a claim upon which relief may be granted; and (3) the court does not have personal jurisdiction over Respondent Ilagan. Each of the arguments propounded by DRT are separately addressed below:

**I.      Action is Barred by 26 U.S.C. § 6213(a)**

DRT's first argument is that 26 U.S.C. § 6213(a) bars the bringing of this action. This statute provides in pertinent part:

> Within 90 days . . . after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for

a redetermination of the deficiency. . . . **The Tax Court shall have no jurisdiction to enjoin any action or proceeding or order any refund under this subsection unless a timely petition for a redetermination of the deficiency has been filed and then only in respect of the deficiency that is the subject of such petition.** Any petition filed with the Tax Court on or before the last date specified for filing such petition by the Secretary in the notice of deficiency shall be treated as timely filed.

26 U.S.C. § 6213(a) (emphasis added).

DRT's argument is essentially a statute of limitations defense, which is an affirmative defense pursuant to Fed. R. Civ. P. 8(c). Here, however, DRT has not yet filed an answer to the FAP. Instead, it has opted to file the instant Motion to Dismiss. Nonetheless, the statute of limitations defense may be raised in a motion to dismiss "[w]hen the running of the statute is apparent from the face of the complaint." Conerly v. Westinghouse Elect. Corp., 623 F.2d 117, 119 (9th Cir. 1980); see also Supermail Cargo v. United States, 68 F.3d 1204, 1206 (9th Cir. 1995) ("A motion to dismiss based on the running of the statute of limitations period may be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.") (internal quotation omitted).

Based on the assertions in the FAP, DRT issued its Notice of Deficiency on July 5, 2007. See FAP, Docket No. 12, at ¶7. The Petitioners did not bring suit in this court to challenge said Notice of Deficiency within the 90 days permitted under 26 U.S.C. § 6213(a). Based on this lack of timely filing, DRT contends that this court is without jurisdiction "to enjoin any action or proceeding or order any refund" as directed by 26 U.S.C. § 6213(a).

In response, the Petitioners assert that the FAP is not a "challenge" to the July 2007 Notice of Deficiency as contemplated by Section 6213(a).[6] Rather, the Petitioners contend that the FAP seeks a judicial review of DRT's acts in sustaining the tax lien. See FAP, Docket No. 12, at ¶9. The Petitioners claim that DRT erred in sustaining said lien and in stating that the Offer in Compromise had been rejected. Id. The Petitioners argue that the question of the underlying liability is a part of the FAP only because DRT "invited" the position by sustaining

---

[6] Unless otherwise indicated, all section references are to the Internal Revenue Code as contained in Title 26 of the United States Code.

the tax lien. Mr. Fisher repeated this position – that Petitioners are not challenging their underlying tax liability as determined by DRT in its July 2007 Notice of Deficiency – several times during the course of the hearing.

The court finds that Section 6213(a) is not a bar to this action since the FAP is not a direct challenge to the underlying tax liability set forth in DRT's Notice of Deficiency. The Petitioners are not contesting the deficiency amounts computed by DRT in July 2007; whether the Notice of Deficiency computed a tax liability of one million dollars or any other amount is of no consequence to the claims in the FAP. Rather, the Petitioners "challenge" the underlying tax liability only in the sense that they are contesting DRT's ability to sustain the tax lien if it has "accepted" the Offer in Compromise by operation of law when it failed to "lawfully reject" the Offer in Compromise within the two-year window set forth in 26 U.S.C. § 7122(f). The FAP also challenges DRT's alleged failure to provide the Petitioners with an appeal of DRT's "written rejection" of their Offer in Compromise. This, too, does not amount to a challenge of the Petitioners' underlying tax liability.

In its pleadings and at the hearing, DRT relied upon the decision issued by the United States Tax Court in Baltic v. Comm'r, 129 T.C. 178 (2007), to support DRT's contention that the Offer in Compromise is a challenge to the "underlying tax liability" which is barred by Sections 6213(a) and 6330(c)(2)(B).[7] Similar to the Petitioners here, the taxpayers in Baltic received a notice of deficiency and failed to challenge said deficiency by filing a petition with the tax court. Id. at179. A notice of tax lien was thereafter issued, along with a notice under Section 6330 of the intent to levy against the taxpayers' property. Id. The taxpayers then requested a collection due process hearing, stating in its request that they "disagree[d] with the determination of taxes and additions owed, and the calculations of the amounts, if any." Id. Prior to the scheduled CDP hearing, the taxpayers submitted an Offer in Compromise - Doubt as to Liability ("OIC-DATL"). Id. The settlement officer presiding over the CDP hearing told the

---

[7] Section 6330(c)(2)(B) allows a taxpayer to challenge the existence or amount of his underlying tax liability at a CDP hearing *if* the taxpayer neither received any statutory notice of deficiency for such tax liability nor otherwise had an opportunity to dispute it.

taxpayers that they could not challenge the underlying tax liability at said hearing since they had an opportunity to challenge the liability after receiving the notice of deficiency but did not do so. Id. at 180. At the conclusion of the CDP hearing, the settlement officer issued a notice sustaining the tax lien. Id. The taxpayers thereafter initiated an action before the tax court, arguing, among other things, that the settlement officer's refusal to consider their OIC-DATL herself as part of the CDP hearing was an abuse of discretion. Id.

In ruling upon the tax commissioner's motion for summary judgment, the Baltic court concluded that the taxpayers were in fact disputing the amount of taxes owed in filing the OIC-DATL. Id. at 183 ("they dispute only the amount of tax due"). The tax court held that "a challenge to the amount of the tax liability made in the form of an OIC-DATL by a taxpayer who has received a notice of deficiency is a challenge to the underlying tax liability." Id. Because the taxpayers had their chance to challenge that liability under Section 6213(a) but did not do so, the tax court concluded that Section 6330(c)(2)(B) barred them from challenging their tax liability at the CDP hearing. Id. The tax court found no abuse of discretion in the hearing officer's refusal to consider the OIC-DATL at the CDP hearing since it was not being presented as a collection alternative. Id.

DRT's reliance upon the Baltic decision is misplaced because the facts there are quite distinct from the facts of this case. The Petitioners filed their Offer in Compromise prior to DRT's issuance of the Notice of Deficiency and well before the notice of tax lien, while the Baltic taxpayers filed their offer in compromise after the notice of deficiency and notice of tax lien were issued. Unlike the taxpayers in Baltic who disputed the amount of tax due, the Petitioners are not disputing their underlying tax liability as determined by DRT. While the Petitioners were challenging their tax liability at the time the Offer in Compromise was made in 2006, that was not the Petitioners' posture at the CDP hearings held in 2009 nor is it their current position. The FAP does not seek a redetermination of the taxes owed. Rather, the FAP contests DRT's ability to sustain its tax lien because the Petitioners allege that DRT has "accepted" their Offer in Compromise by operation of law. Thus, the Baltic holding is inapplicable to the facts of this case.

DRT's reliance upon Yesse v. Comm'r, T.C. Memo. 2008-157, 2008 WL 2491674 (U.S. Tax Ct.) is equally unavailing. The taxpayers in Yesse received a notice of deficiency but failed to petition the tax court with respect to the notice of deficiency. Id. at *1. A notice of intent to levy was thereafter issued, and the taxpayers requested a CDP hearing pursuant to Section 6330. Id. At the CDP hearing, the taxpayers indicated they wanted the Appeals officer to consider an offer in compromise, but the taxpayers had not submitted such an offer prior to the hearing. Id. The Appeals officer denied the taxpayers request and eventually sustained the proposed levy. Id. Relying upon Baltic, the tax court granted the Commissioner's motion for summary judgment and held that the taxpayers could not resurrect their opportunity to challenge their underlying tax liability by raising an offer in compromise based on doubt as to liability at the CDP hearing. Id. at *3.

Unlike Yesse where an offer in compromise was never made, the Petitioners here actually filed the Offer in Compromise well before DRT issued the Notice of Deficiency or the Notice of Tax Lien. While the taxpayers in Yesse attempted to use an offer in compromise as a means to challenge their underlying tax liability at the CDP hearing, this is not the scenario here since the Petitioners are not challenging the amount of the underlying tax. The Petitioners acknowledge that they are not permitted to dispute the tax assessed in the notice of deficiency because they failed to file a timely petition with this court following its issuance in July 2007. The Baltic and Yesse decisions are irrelevant to the claims raised by the Petitioners in the FAP. Based on the above analysis, the court rejects DRT's argument that this action is barred by Section 6213(a).

**II.     FAP Fails to State a Claim Upon Which Relief may be Granted**

DRT's second argument seeks dismissal under Fed. R. Civ. P. 12(b)(6) on the basis that the FAP fails to state a claim upon which relief may be granted. Neither party addressed in their briefs or at the hearing the appropriate standard the court must apply when considering Rule 12(b)(6) motions to dismiss. The court believes a brief discussion about the appropriate standard is necessary before addressing the merits of DRT's argument.

///

A. Rule 12(b)(6) Standard

In <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), the Supreme Court discussed the standard complaints must meet to be legally sufficient to survive a Rule 12(b)(6) challenge. <u>Twombly</u> concerned a conspiracy claim under Section 1 of the Sherman Act. <u>Id.</u> at 548-49. The Supreme Court recognized that Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Id.</u> (*quoting* <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Nevertheless, the court found that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u> at 555 (internal quotations and citations omitted). The Court further explained that "factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> The Court held that an antitrust plaintiff must plead a set of facts "plausibly suggesting (not merely consistent with)" a Sherman Act violation to survive a motion to dismiss. <u>Id.</u> at 557.

In <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937 (2009), the Supreme Court clarified that <u>Twombly's</u> "plausibility standard" applied to pleadings in civil actions generally, rejecting the plaintiff's suggestion that the decision in <u>Twombly</u> be limited to antitrust claims. 129 S. Ct. at 1953. The Supreme Court stated that

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

<u>Id.</u> at 1949 (internal quotations and citations omitted).

The Supreme Court's explained that its decision in <u>Twombly</u> was based on two underlying principles:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [Twombly, 550 U.S. at] 555 . . . (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id. at 556. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S. Ct. at 1949-50 (internal citation omitted).

Thus, in considering a motion to dismiss, a court can begin by identifying assertions in the pleadings that are not entitled to the assumption of truth because they are no more than conclusions. Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

    B.    Applying Above Standard to this Case

The court begins its analysis by identifying the allegations in the FAP that are not entitled to the assumption of truth. With regard to DRT's decision to sustain the tax lien, the Petitioners plead that DRT "erred" when it sustained the Notice of Guam Tax Lien and that the bases for DRT's decision are in error. See FAP, Docket No. 12, at ¶¶9A-F. These bare assertions are mere conclusory statements and are not entitled to be assumed true. Additionally, with respect to the Petitioners' claim that their Offer in Compromise was accepted, the FAP pleads that DRT "did not lawfully reject" the Petitioners' Offer in Compromise within the statutory two-year period, and thus the failure to reject constitutes an acceptance. See FAP, Docket No. 12, at ¶10L. This allegation, too, is partially conclusory in nature and will not be presumed true.

The court next examines the factual allegations in the FAP to determine if they "plausibly" suggest an entitlement to relief. The Petitioners plead that they filed an "Offer in

Compromise . . . based upon a doubt as to liability" on October 25, 2006. See FAP, Docket No. 12, at ¶10B. While DRT allegedly "rejected" the Offer in Compromise on October 10, 2008, the FAP asserts that DRT failed to conduct an independent administrative review of said Offer in Compromise prior to rejection as required by law and regulation. See FAP, Docket No. 12, at ¶¶10F, H & I. Furthermore, the FAP pleads that on October 22, 2008, the Petitioners requested an appeal of the rejection of their Offer in Compromise, but no appeal was given. See FAP, Docket No. 12, at ¶10J. The FAP's well-pleaded facts, along with the understanding that compromise procedures outlined in Section 7122 are exclusive and require strict compliance,[8] give rise to a plausible inference that the Offer in Compromise was not "lawfully rejected" as the Petitioners contend. Taken as true, these allegations are consistent with the Petitioners' claims that DRT abused its discretion in rejecting the Offer in Compromise, failing to provide the Petitioners with a means to appeal said rejection, and in sustaining the tax lien after it had "accepted" (by operation of law) the Offer in Compromise.

      The court finds that the FAP contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Accordingly, the court must deny the motion to dismiss.[9]

---

[8] See United States v. Saladoff, 233 F. Supp. 255, 258-59 (E.D. Pa. 1964) ("Section 7122 of the Internal Revenue Code of 1954 sets forth in broad language the authority of the 'Secretary (of the Treasury) or his delegate' to enter into compromise agreements. These regulations, which have the force of law, prescribe detailed procedures for the investigation and approval of compromise agreements by designated officials of the Internal Revenue Service. This intricate system of formal safeguards was established in order to minimize hasty administrative action and to insure careful deliberation in an important area of tax policy. It is for this reason that the compromise procedures outlined in the Code and Regulations are considered exclusive and require strict compliance.") (citing Botany Worsted Mills v. United States, 278 U.S. 282 (1928); Steiden Stores v. Glenn, 94 F. Supp. 712 (W.D. Ky.1950); George H. Baker, 24 T.C. 1021 (1955)).

[9] DRT defends against the Petitioners' assertion that it did not "lawfully reject" the Offer in Compromise by claiming that (1) the Offer in Compromise was merely a settlement offer and not a true offer in compromise as that term of art is used in Section 7122 or 26 C.F.R. § 301.7122-1; (2) the Offer in Compromise was never "pending;" (3) the Offer in Compromise was "returned;" and (4) the Offer in Compromise was timely rejected. The court, however, will

### III. Lack of Personal Jurisdiction Over Respondent Ilagan

Finally, DRT asserts this action as against Mr. Ilagan in his official capacity should be dismissed.[10] DRT contends that 48 U.S.C. §1421i(h)(2) only permits a tax suit to be maintained against the Government of Guam and not against its officers or employees. Thus, DRT requests the court dismiss Mr. Ilagan as a respondent in this action.

The pertinent statute provides as follows:

> (2) Suits for the recovery of any Guam Territorial income tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, under the income-tax laws in force in Guam, . . . may, regardless of the amount of claim, be maintained against the government of Guam . . . .
>
> (3) Execution shall not issue against the Governor or any officer or employee of the government of Guam on a final judgment in any proceeding against him for any acts or for the recovery of money exacted by or paid to him and subsequently paid into the treasury of Guam, in performing his official duties under the income-tax laws in force in Guam pursuant to subsection (a) of this section, if the court certifies that--
>   (A) probable cause existed; or
>   (B) such officer or employee acted under the directions of the Governor or his delegate.
> When such certificate has been issued, the Governor shall order the payment of such judgment out of any unencumbered funds in the treasury of Guam.

48 U.S.C. §1421i(h)(2)-(3).

Based on the above, DRT argues that the Government of Guam is the only proper defendant. DRT contends that subsection (h)(3), which precludes execution of judgements against the Governor or any other officer or employee of the Government of Guam, further supports its contention that a suit may be maintained only against the Government of Guam.

---

not consider these arguments in ruling upon the motion to dismiss since they were raised outside of the pleadings. Unlike the tax courts in <u>Baltic</u> and <u>Yesse</u> which were faced with motions for summary judgment, the motion before this court is a motion to dismiss, which requires the application of a different standard. Additionally, while the <u>Baltic</u> and <u>Yesse</u> courts were permitted to consider matters outside the pleadings in ruling upon the motions for summary judgment, this court's review is more limited.

[10] This issue was not addressed by either counsel at the hearing. Accordingly, the court presumes the parties will rest on the arguments as addressed in their respective briefs.

In response, the Petitioners note that Section 1421i(h)(2) does not specifically limit suits against the Government of Guam only. Furthermore, the Petitioners contend that because they are not seeking to execute a judgment (yet), subsection 1421i(h)(3) is inapplicable to the analysis here. Finally, the Petitioners request the court to take judicial notice of the fact that Respondent Ilagan has been named a defendant or respondent in other tax suits filed in this court, and he never sought to be dismissed from said actions.

The court agrees with the Petitioners. As noted, Section 1421i(h)(2) does not specifically prohibit the bringing of suits against the Director of DRT, especially where, as here, the Petitioners are not seeking the recovery of income taxes alleged to have been erroneously assessed but are instead challenging DRT's compliance with the statutory and regulatory requirements. Contrasted against Section 1421i(h)(2) is the federal counterpart found at 26 U.S.C. § 7422(f).[11] While Section 7422(f) explicitly limits maintenance of tax refund suits against the United States only, the Organic Act provision (48 U.S.C. § 1421i(h)(2)) does not contain such a similar limitation.

Respondent Ilagan, as Director of the Department of Revenue and Taxation, occupies a position of tremendous authority. Actions by his department have an effect on almost every

---

[11] This statute provides:

(f) Limitation on right of action for refund.--
(1) General rule.--A suit or proceeding referred to in subsection (a) may be maintained **only against the United States and not against any officer or employee of the United States** (or former officer or employee) or his personal representative. . . .
(2) Misjoinder and change of venue.--**If a suit or proceeding** brought in a United States district court against an officer or employee of the United States (or former officer or employee) or his personal representative **is improperly brought** solely by virtue of paragraph (1), **the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee** as of the time such action commenced, upon proper service of process on the United States. Such suit or proceeding shall upon request by the United States be transferred to the district or division where it should have been brought if such action initially had been brought against the United States.

26 U.S.C.A. § 7422 (emphasis added).

individual on Guam. Historically, suits brought to challenge the underlying tax liability of individuals have been brought in this court by individuals against the Director or his designee. See Jones v. Ingling, 432 F. Supp. 428 (D. Guam 1961), *rev'd*, 303 F.2d 438 (9th Cir. 1962) and Gayle v. Blaz, 432 F. Supp. 1167 (D. Guam 1977). Prior cases within this court evidence precedents that the Director of Revenue and Taxation is an appropriately named party in such cases, because he is only sued in his official capacity and any relief that may be enforced against the Department is an act that only the Director has authority to provide.

Additionally, the court takes judicial notice of the fact that Respondent Ilagan has been named as a defendant or respondent in other tax suits filed in this court and has not sought to be dismissed from said actions on the basis that he is not a proper party.[12] Moreover, the inclusion of Respondent Ilagan as a named party is necessary to the relief sought, especially since it is he in his role as the Director who will have to implement any remedy that may be ordered by the court.

## CONCLUSION

Because the FAP does not seek to challenge the Petitioners' underlying tax liability, the court finds that this action is not barred by either Section 6213(a) or 6330(c)(2)(B).

---

[12] Based on an electronic search of the court's database, the following tax cases have been brought against Respondent Ilagan in his official capacity:

- Wendt v. Director of DRT, CV08-00020 (petition for redetermination);
- Government of Guam v. Camacho, *et al.*, CV06-00021 (complaint alleging due process violation in assessment and collection of real property taxes);
- Torres v. Government of Guam, *et al*., CV04-00038 (complaint for declaratory and injunctive relief, and/or for recovery of earned income tax credits) (although Respondent Ilagan was named as one of the defendants, only then Attorney General Douglas B. Moylan moved to dismiss himself as an improperly named defendant); and
- Santos v. Camacho, CV04-00006 (class action petition for recovery of income tax refunds or, in the alternative, for a writ in the nature of mandamus).

The above list does not include numerous other tax cases brought against Respondent Ilagan's predecessors who held the position of Director of the Department of Revenue and Taxation.

Additionally, the court finds that the FAP contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Finally, the court concludes that 48 U.S.C. §1421i(h) does not prevent the Petitioners from bringing this action against Respondent Ilagan in his official capacity as Director. Based on the above analysis, the court must deny the Motion to Dismiss in its entirety.

IT IS SO ORDERED.

/s/ Joaquin V.E. Manibusan, Jr.
U.S. Magistrate Judge
Dated: Feb 03, 2010